## AMERICAN PIONEER LIFE INSURANCE COMPANY v. Samuel O. ROGERS, Individually, and Samuel O. Rogers, and Deborah K. Rogers, as Joint Guardians of Rachel L. Rogers, A Minor

88-143                                            753 S.W.2d 530

Supreme Court of Arkansas
Opinion delivered July 18, 1988
[Rehearing denied September 12, 1988.]

*Davidson, Horne & Hollingsworth, A Professional Association,* by: *Allan W. Horne* and *Chet Roberts,* for appellant.

*Riffel, King & Smith,* by: *V. James King, Jr.,* for appellee.

JOHN I. PURTLE, Justice. The appellant, American Pioneer Life Insurance Company, issued a major medical insurance policy to Samuel O. Rogers, the appellee, which policy covered the appellee and his dependents. Appellee's daughter, Rachel R. Rogers, a minor, received severe personal injuries in an automobile accident. The appellant paid the medical expenses and now claims a right of subrogation to a portion of the proceeds recovered by the appellee from the third party tortfeasor. On appeal the appellant argues that the trial court erred in holding that the doctrine of equitable subrogation is dependent upon an express contractual provision. We conclude from the facts of this case that the trial court did not err.

On January 28, 1987, the appellee filed a claim under the major medical expense group health insurance policy on behalf of his daughter, Rachel Rogers. At the time the appellee made the claim for medical benefits, the appellant requested that the appellee execute and return to it a standard subrogation form.

This form, if signed, would have acknowledged that the insured agreed that the subrogation rights of his insurance carrier entitled the carrier to collect from the proceeds of any recovery from a third party tortfeasor. The appellee refused to execute the subrogation agreement and denied that the company had any such right of recovery.

The appellant processed the claim and paid medical care and related expenses totaling $68,341.27. State Farm Insurance Company, carrier for the third party tortfeasor, paid the sum of $250,000 into the registry of the Randolph County Probate Court. The court disbursed most of the money but ordered $96,650 held by the probate court pending determination of the subrogation rights of the appellant.

The appellant filed a complaint asserting its right to subrogation for the medical expenses which it had paid. The matter was submitted to the trial court on pleadings, briefs and stipulation of facts. On December 9, 1987, the court denied the appellant's claim for subrogation on grounds that the policy of insurance did not expressly provide for subrogation.

The question presented to this court is whether the doctrine of equitable subrogation in personal injury cases is dependent upon express contractual provisions. In its claim to collect the medical benefits paid, the appellant contends that, by operation of law, it is subrogated to its share of the funds paid by State Farm on behalf of the third party tortfeasor. We have reviewed all of the cases cited, and others, and have not found a case precisely on point. Therefore, it is necessary to examine this argument in detail.

The appellant first relies upon the case of *Home Insurance Co.* v. *Lack*, 196 Ark. 888, 120 S.W.2d 355 (1938). The opinion in that case stated: "The only question to be determined is whether the insurance company was a proper party to the suit." The insurance company and its insured had joined the party plaintiffs against a third party tortfeasor to recover for damage to the insured vehicle. On demurrer the trial court struck the insurance company's name from the complaint because it was not a proper party to the suit. This court reversed and simply held that even though the insurance company was claiming subrogation, it was a proper party plaintiff and should have been allowed to

proceed with the trial.

The second case relied upon by appellant is *Baker, Adm'r* v. *Leigh*, 238 Ark. 918, 385 S.W.2d 790 (1965). This suit involved a real estate transaction between two persons, Mr. Baker and Mr. Leigh. Mr. Baker died and Mr. Leigh paid out money to settle a trusteeship which had been previously created between the men. Leigh filed suit to recover by way of subrogation for the settlement he had made on behalf of the trusteeship. The defendants in that case pleaded the Dead Man's Statute as a defense to Leigh's claim. There was no dispute that Leigh had paid money for the protection of the interest of Mr. Baker, Sr. and his estate. In permitting Leigh to perfect a lien on Baker's interest in the land, the court relied upon the doctrine of equitable subrogation. The doctrine was declared to be for the purpose of doing complete and perfect justice between the parties without regard to form. The *Baker* opinion held that "where it is equitable that a person, not a mere stranger, intermeddler, or volunteer, furnishing money to pay a debt, should be substituted for or in place of the creditor, such person will be so substituted." The court, relying on *Pomeroy, Equity Juris.*, vol. 3, § 1212, stated:

> In general, when any person having a subsequent interest in the premises, and who is therefore entitled to redeem for the purpose of protecting such interest, and who is not the principal debtor, primarily and absolutely liable for the mortgage debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep alive and enforce the lien so far as may be necessary in equity . . . .

The appellant also relies on *Shipley* v. *Northwest Mutual*, 244 Ark. 1159, 428 S.W.2d 268 (1968). This case also concerned the right of subrogation in an insurance policy. *Shipley* is distinguishable from the present case in that there was an express right of subrogation in the policy of insurance. Likewise, the case of *Martin* v. *Lavender Radio & Supply Inc.*, 228 Ark. 85, 305 S.W.2d 845 (1957), is inapplicable because it involved the statutory right of subrogation by a workers' compensation carrier against a third party tortfeasor who had caused a loss for which the workers' compensation carrier had paid benefits.

The appellant also relies to some extent on *Southern Cotton Oil Company* v. *Napoleon Hill Cotton Company*, 108 Ark. 555,

158 S.W. 1082 (1913). This case involved the priority of liens or mortgages. After executing two mortgages a judgment was rendered against the landowner on a separate matter. The landowner obtained a third loan to pay off the other two mortgages. The borrower never told the last lender about the judgment lien. The *Southern Cotton Oil Co.* decision turned on the fact that both the lender and the borrower intended the new debt to become a first mortgage upon application of the proceeds to extinguish the prior debts.

The final case relied upon by the appellant is *Cooper* v. *Home Owners' Loan Corp.*, 197 Ark. 839, 126 S.W.2d 112 (1939). The Coopers purchased a lot as tenants by the entirety and executed a purchase money mortgage and note for the unpaid balance. Mrs. Cooper was committed to the state hospital in 1933. In 1934 Mr. Cooper secured a loan to refinance the indebtedness. If the wife executed the deed, it was not effective because she had been adjudged incompetent. Mr. Cooper subsequently remortgaged the same property, and the second lender foreclosed after default. The only question before the court was whether the second lender was subrogated to the rights granted in the first mortgage which had been paid off with the proceeds of the second loan. This court invoked the doctrine of equitable subrogation to substitute the priority of the first lienholder to that of the second lienholder.

All of the Arkansas cases reviewed relate to persons or parties having a subsequent interest or who are bound to pay a debt or remove an incumbrance. The doctrine of equitable subrogation is based upon a secondary obligation contingent upon the performance of another party. The doctrine has not been applied except in property interest cases and when the parties have expressly so agreed. Therefore, we examine the question as treated in other jurisdictions.

We find the case of *Frost* v. *Porter Leasing Corp.*, 436 N.E.2d 387 (Mass. 1982), to be persuasive. Frost was injured in a motor vehicle accident. He carried group health and accident insurance, the premium having been paid by his employer. His health insurance carrier paid $26,566.04 in medical expenses. Frost and his wife filed suit against the third party tortfeasor claiming damages for, among other things, past and future

medical expenses. The medical carrier intervened, asserting a right of subrogation for any proceeds collected by Frost up to the amount of the payments made under the health insurance policy. The Frosts eventually entered into a settlement with the third party for $250,000.

The trial judge held that the insurance carrier was entitled to subrogation of the amounts it had paid to Frost. The costs of collection incurred by Frost were deducted by the trial court. A direct appeal was granted in order to settle the issue of the medical carrier's right of subrogation.

After an extensive review of cases and authorities, the Massachusetts Supreme Judicial Court stated:

> [The question is] "whether a group insurer which provides medical and hospital expenses benefits to an insured has a right of subrogation to a recovery by the insured against a tortfeasor for personal injuries even though the group insurance policy contains no express provision entitling the insurer to subrogation rights." We conclude that the insurer has no right, in the absence of a subrogation clause, to share in the insured's recovery against the tortfeasor.

The *Frost* case recognized that equitable subrogation is concerned with the adjustment of rights when a party is entitled to recovery from more than one source, one of which bears a primary legal responsibility. In such case, if the secondary source pays the obligation it succeeds to the rights of the party it has paid against the primarily responsible party. Equitable subrogation is also used to prevent a windfall to an insured. *Frost* held that subrogation may arise as a matter of general law. However, it excepted medical payment insurance policies from the doctrine, unless there is a subrogation clause in the insurance contract.

Courts have readily implied rights of equitable subrogation in cases concerning property and policies of insurance covering property damage. *Home Insurance Co.* v. *Lack*, supra; *Cooper* v. *Home Owners' Loan Corp.*, supra; *Travelers Insurance Co.* v. *Graye*, 263 N.E.2d 442 (Mass. 1970); and *Frost* v. *Porter Leasing Corp.*, supra.

However, recovery for medical insurance benefits and tort damages does not necessarily produce a windfall or duplicative

recovery. Most always when there is tort recovery the consideration for payment by the tortfeasor includes loss of wages, loss of earning capacity, pain and suffering, permanent or temporary physical impairment, medical expenses, property damages and intangible losses which are not susceptible to exact measurement. The principles which cause us to recognize equitable subrogation in property disputes are not present in the field of medical expense payments for personal injuries. Moreover, in the case before us the record does not reveal whether any of the proceeds paid by the third party tortfeasor's liability insurance carrier was for reimbursement of past medical expenses.

Therefore, we conclude that in the absence of a specific subrogation clause in the insurance contract, a medical expense insurance carrier has no right to share in the proceeds of a settlement or recovery by the insured from a third party tortfeasor.

Affirmed.

HOLT, C.J., and DUDLEY and NEWBERN, JJ., concur.

HAYS, J., dissents.

DAVID NEWBERN, Justice, concurring. I agree this case must be affirmed because we cannot tell if the money received by the injured party from State Farm Insurance, carrier for the third-party tortfeasor, represents a payment for medical expenses. From the record we know only that State Farm paid $250,000 in settlement. This figure could be the limits of the policy, for permanent disability, disfigurement, or for any other element of damages, and is not necessarily compensation for medical expenses. We cannot tell whether the party seeking subrogation has paid the obligation which would be the subject of the subrogation claim.

I disagree with the majority opinion's conclusion that satisfaction of a personal injury claim is not the sort of payment for which subrogation may be sought. In *Trinity Universal Ins. Co.* v. *State Farm Mutual Auto Ins. Co.*, 246 Ark. 1021, 441 S.W.2d 95 (1969), we allowed an action by an insurance company against another insurance company for contribution in a wrongful death case arising from an automobile accident. In that case the only basis of the plaintiff company's claim was

equitable subrogation.

> An insurer which pays a claim against an insured for damages caused by the default or wrongdoing of a third party is entitled to be subrogated to the insured's rights against such third party, irrespective of the nature of the contract. And it has been held that this result obtains even though the policy contains no stipulations to that effect. But it has been stated that though subrogation clauses within policies are generally enforceable, the common-law concepts of subrogation cannot be employed to create rights of subrogation where a policy provides otherwise. An insurer claiming subrogation rights was entitled to recover from the third person only those claims which it had satisfied. [Footnotes omitted].

The distinction drawn in the majority opinion between the kinds of injuries compensated in personal injury cases and the kind of injuries compensated in property damage or conveyance cases escapes me in the context of subrogation.

HOLT, C.J., and DUDLEY, J., join in this concurrence.

STEELE HAYS, Justice, dissenting. The question is whether an insurer's subrogation claim for insurance benefits paid to an insured under a major medical policy is enforceable where the policy fails to expressly provide for subrogation. We have addressed the issue of equitable subrogation in a number of cases and recognized the doctrine. *Trinity Universal Ins. Co.* v. *State Farm Mutual Auto Ins. Co.*, 246 Ark. 1021, 441 S.W.2d 95 (1969); *Shipley* v. *Northwestern Mutual Ins. Co.*, 244 Ark. 1159, 428 S.W.2d 268 (1968); *Baker* v. *Leigh*, 238 Ark. 918, 385 S.W.2d 790 (1965); *Cooper* v. *Home Owners Loan Corporation*, 197 Ark. 839, 126 S.W.2d 112 (1939). "Perhaps no doctrine of equity jurisprudence is more beneficent in its operation, and perhaps none stands in higher favor." 73 Am. Jur. 2d *Subrogation* § 7, p. 603.

The majority prefers a Massachusetts case, *Frost* v. *Porter Leasing Corp.*, 386 Mass. 425, 436 N.E.2d 387 (1982), to our own precedents. I respectfully disagree.